## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **WILLIAM R. HONEYCUTT,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:15cv00011 |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | **MEMORANDUM OPINION** |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| Defendant | ) | BY: PAMELA MEADE SARGENT |
| | ) | United States Magistrate Judge |

### I.  Background and Standard of Review

Plaintiff, William R. Honeycutt, ("Honeycutt"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer based on consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Oral argument has not been requested; therefore, the matter is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

Case 2:15-cv-00011-PMS   Document 13   Filed 10/18/16   Page 1 of 24   Pageid#: 610

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Honeycutt protectively filed an application for DIB on February 2, 2012, alleging disability as of May 11, 2011, due to problems with his back, neck, left shoulder and left knee; insomnia; depression; and anxiety. (Record, ("R."), at 169-70, 185, 189, 212, 223.) The claim was denied initially and on reconsideration. (R. at 85-87, 91-93, 96-100, 102-04.) Honeycutt then requested a hearing before an administrative law judge, ("ALJ"). (R. at 105.) A hearing was held on November 6, 2013, at which Honeycutt was represented by counsel. (R. at 34-56.)

By decision dated December 3, 2013, the ALJ denied Honeycutt's claim. (R. at 15-28.) The ALJ found that Honeycutt meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2016. (R. at 17.) The ALJ also found that Honeycutt had not engaged in substantial gainful activity since May 11, 2011, his alleged onset date.[1] (R. at 17.) The ALJ found that the medical evidence established that Honeycutt suffered from severe impairments,

---

[1] Therefore, Honeycutt must show that he became disabled between May 11, 2011, the alleged onset date, and December 3, 2013, the date of the ALJ's decision, in order to be entitled to DIB benefits.

-2-

namely hypertension; arthralgias; gastroesophageal reflux disease, ("GERD"); mitral valve disorder; lumbar radiculopathy; obstructive sleep apnea; and osteoarthritis, but he found that Honeycutt did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-20.) The ALJ found that Honeycutt had the residual functional capacity to perform sedentary work[2] that did not require more than occasional climbing of ramps or stairs, stooping, kneeling, crouching and overhead reaching with the left upper extremity; that did not require crawling or climbing of ladders, ropes or scaffolds; and that did not require him to work around concentrated exposure to cold, wetness and hazards, such as moving machinery or heights. (R. at 20-21.) The ALJ found that Honeycutt was able to perform his past relevant work as a directory assistance operator. (R. at 27.) Thus, the ALJ found that Honeycutt was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 27-28.) *See* 20 C.F.R. § 404.1520(f) (2015).

After the ALJ issued his decision, Honeycutt pursued his administrative appeals, (R. at 7-10), but the Appeals Council denied his request for review. (R. at 1-5.) Honeycutt then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2015). The case is before this court on Honeycutt's motion for summary

---

[2] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2015).

judgment filed January 5, 2016, and the Commissioner's motion for summary judgment filed February 8, 2016.

## II. Facts

Honeycutt was born in 1956, (R. at 169), which, at the time of the ALJ's decision, classified him as a "person of advanced age" under 20 C.F.R. § 404.1563(e). Honeycutt has a high school education and past work experience as a cable splicer and as a directory assistance operator. (R. at 39-40, 189-90.) Honeycutt testified at his hearing that he suffered a work-related back injury in 1999. (R. at 39.)

Vocational expert, Gerald K. Wells,[3] also testified at Honeycutt's hearing. (R. at 50-55.) Wells classified Honeycutt's work as a cable splicer as light[4] and skilled, and his work as a directory assistant as sedentary and semi-skilled. (R. at 51.) Wells was asked to consider a hypothetical individual of Honeycutt's age, education and work experience, who would be limited to light work that did not require climbing of ladders, ropes or scaffolds, kneeling or crawling; that did not require more than occasional climbing of ramps and stairs, stooping, crouching and reaching with his left upper extremity; and that did not require concentrated exposure to cold, wetness and hazardous moving machinery. (R. at 51-52.) Wells

---

[3] The transcript of Honeycutt's hearing inaccurately identifies the vocational expert as Darryl Wells.

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2015).

-4-

stated that the individual would be limited to light and sedentary work, and such an individual could perform Honeycutt's past work in directory assistance. (R. at 52.) When asked to consider the same individual who would be limited to light work that did not require more than occasional decision making and changes in the work setting, Wells stated that such an individual could not perform any of Honeycutt's past work. (R. at 52-53.) Wells stated that the individual could, however, perform other jobs existing in significant numbers in the national economy, including those of an office helper, a cashier and a mail room clerk, all of which were classified as light work. (R. at 53-54.) Wells stated that, should the same hypothetical individual be limited to sedentary work, he could not perform Honeycutt's past work as a directory assistant based on the stress level limitation provided. (R. at 54-55.)

In rendering his decision, the ALJ reviewed records from Wise County Public Schools; Dr. Michael Hartman, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Joseph Duckwall, M.D., a state agency physician; Norton Community Hospital; Vada Rose, F.N.P., a family nurse practitioner; Dr. Mark A. Rowley, M.D.; Patrick N. Farley, Ed.D., a licensed professional counselor; Dr. Kevin Blackwell, D.O.; Robert S. Spangler, Ed.D., a licensed psychologist; Dr. Danny A. Mullins, M.D., an orthopaedist; Willard D. Sims, M.Ed., a licensed senior psychological examiner; Diane L. Whitehead, Ph.D., a licensed clinical psychologist; Dr. Charles Black, D.O.; Dr. Jack Dalton, D.O.; and Dr. Khalid J. Awan, M.D.

Honeycutt received physical therapy for his low back pain at Norton Community Hospital from August 2011 through October 2011. (R. at 238-88, 295-

314, 317-23, 344-45.) Honeycutt made significant improvement and reported decreased pain and increased range of motion in his lumbar and cervical spines. (R. at 238, 245, 247, 345.) He performed household chores and activities of daily living independently and was discharged with a home exercise program. (R. at 344-45.)

On September 24, 2010, Honeycutt saw Vada Rose, F.N.P., a family nurse practitioner with Community Physicians, for allergy symptoms. (R. at 365-66.) Honeycutt reported that he had lost weight after recently participating in a fast, which made him feel better. (R. at 365.) He reported occasional left shoulder and lumbar spine pain. (R. at 365.) Honeycutt stated that he experienced back pain after mowing or doing strenuous labor. (R. at 365.) Upon examination, Honeycutt had no edema in his lower extremities; he had pain with bending; and he had no reduction or restriction with range of motion in his back or left shoulder. (R. at 365.) He reported that Lortab relieved his back pain. (R. at 365.) On December 23, 2010, Honeycutt complained of left elbow and right knee pain. (R. at 363.) Upon examination, Honeycutt had pain in the left elbow with extension and flexion; positive Tinel's sign; normal strength in both arms; and normal grip strength in both hands. (R. at 363.) He had pain in his right knee with flexion and extension, but normal strength in both legs. (R. at 363.)

On May 24, 2011, Honeycutt reported that he was planning to retire on June 18, 2011. (R. at 360-61.) He expressed excitement about the prospects of being able to do some things that he enjoyed, such as fishing and hunting. (R. at 360.) He complained of joint pain in his knees and lower back. (R. at 360.) On examination,

-6-

Honeycutt had pain in the lower back with bending forward, backward and side-to-side. (R. at 360.) Honeycutt also had pain in both knees with extension, flexion and rotation, but no restriction or reduction with range of motion. (R. at 360.) On May 26, 2011, x-rays of Honeycutt's cervical, thoracic and lumbar spines showed mild degenerative changes without other acute abnormality. (R. at 329-31.) On June 9, 2011, an echocardiogram showed moderate mitral valve regurgitation; mild thickening/calcification of the anterior and posterior mitral leaflets; mild mitral annular calcification; mild tricuspid regurgitation; and mild pulmonary hypertension. (R. at 327-28.)

On August 24, 2011, Honeycutt complained of back pain. (R. at 338-39.) On August 26, 2011, an MRI of Honeycutt's lumbar spine showed lumbar degenerative changes and multilevel lumbar discogenic disease, including disc protrusions and annular tears. (R. at 324.) A sleep study performed on September 14, 2011, showed no evidence of obstructive apnea-hypopnea syndrome, and no arrhythmias, parasomnias or periodic limb movements were noted. (R. at 315.) On December 28, 2011, Honeycutt complained of palpitations after taking over-the-counter herbal supplements, as well as arthralgias. (R. at 340-42.) He denied neck pain, depression, anxiety and memory loss. (R. at 340-41.) Examination of Honeycutt's left knee showed anterior knee tenderness and a rash on his lower extremities. (R. at 342.) On December 28, 2011, x-rays of Honeycutt's left knee showed a large joint effusion and soft tissue swelling. (R. at 294.)

On January 4, 2012, Dr. Charles Black, D.O., a physician with Community Physicians, saw Honeycutt for left knee pain. (R. at 383.) Honeycutt had no gross

-7-

motor or sensory deficits; he denied tenderness to deep palpation along the patella tendon and quadriceps tendon; he had a positive patella grind test; and he displayed full range of motion of the knee. (R. at 383.) X-rays of Honeycutt's left knee showed well-maintained joint space at the medial, lateral and patella femoral compartment. (R. at 383.) Dr. Black diagnosed chondromalacia of the left patella. (R. at 383.) Honeycutt was advised to continue activity as tolerated and was prescribed anti-inflammatory medication. (R. at 383.)

On February 1, 2012, Dr. Mark A. Rowley, M.D., saw Honeycutt for left knee pain. (R. at 381.) Honeycutt reported some relief with anti-inflammatory medication. (R. at 381.) Dr. Rowley reported that Honeycutt had a normal gait; that his left knee demonstrated full range of motion; he had no atrophy or effusion; he had normal strength; and mild medial joint line tenderness. (R. at 381.) Dr. Rowley diagnosed mild degenerative joint disease with possible associated meniscal tear. (R. at 381.) Honeycutt agreed with nonoperative management and to continue with his anti-inflammatory medication. (R. at 381.) On March 27, 2012, Honeycutt denied anxiety and depression. (R. at 407.) Examination was normal with the exception of tenderness in Honeycutt's left knee. (R. at 408.)

On July 9, 2012, Rose saw Honeycutt for complaints of shoulder pain and arthralgias. (R. at 400-04.) He denied anxiety and depression. (R. at 401.) Honeycutt had restricted range of motion of the lumbosacral and cervical spines and tenderness in the left knee. (R. at 402-03.) Rose reported that Honeycutt had a

-8-

normal affect and mood. (R. at 403.) Also on that day, Rose wrote a letter[5] to Honeycutt's attorney stating that Honeycutt officially retired in June 2011, and prior to that, he was using a lot of his vacation time to get rest for his back and joint pain. (R. at 398.) She noted that Honeycutt's joint pain had affected him for several years. (R. at 398.) Rose reported that Honeycutt had cervical neck pain; shoulder pain; bilateral knee pain; cervical radiculopathy; lumbar spine radiculopathy; and multiple joint pains. (R. at 398.) On August 29, 2012, Honeycutt complained of left foot and ankle pain. (R. at 456.)

On January 10, 2013, Honeycutt denied anxiety and depression. (R. at 447.) Rose noted that Honeycutt's affect and mood were normal. (R. at 449.) Rose reported that Honeycutt had limited range of motion of the lumbosacral and cervical spines and left knee tenderness. (R. at 449.) On February 27, 2013, Rose wrote a letter to Honeycutt's attorney stating that Honeycutt's joint pain had affected him for several years. (R. at 468.) Rose reported that Honeycutt had cervical neck pain and radiculopathy; shoulder pain; bilateral knee pain; lumbar spine radiculopathy; and multiple joint pains. (R. at 468.) On March 26, 2013, Honeycutt was seen for elevated blood pressure. (R. at 532.) He stated that he had been eating Canadian bacon, processed foods and adding salt to food. (R. at 532.) He reported that he had no suicidal ideations, sleep disturbance, anxiety or depression. (R. at 533.) Rose reported that Honeycutt's affect and mood were normal. (R. at 535.) On April 2, 2013, and July 11, 2013, Honeycutt reported that he had no suicidal ideations, sleep disturbance, anxiety or depression. (R. at 519, 526.) Rose reported that Honeycutt's affect and mood were normal. (R. at 522,

_____

[5] Rose wrote a similar letter on February 27, 2013. (R. at 468.)

529.)

On July 17, 2013, an echocardiogram showed left ventricle ejection fraction was normal; mild thickening/calcification of the anterior and posterior mitral leaflets; mild mitral valve prolapse; and mild to moderate mitral valve regurgitation. (R. at 487-88.) On October 10, 2013, Honeycutt reported depression, but denied suicidal ideations, sleep disturbance or anxiety. (R. at 512.) Rose reported that Honeycutt's affect and mood were normal. (R. at 514.) He had restricted range of motion of his lumbosacral and cervical spines and tenderness in his left knee. (R. at 515.) Rose prescribed medication for Honeycutt's depression. (R. at 516.)

On December 21, 2011, Dr. Khalid J. Awan, M.D., performed an ophthalmological examination. (R. at 396.) Examination was normal, and Dr. Awan diagnosed glaucoma suspect and steroid responder/ocular hypertension. (R. at 396.) On July 13, 2012, Dr. Awan reported that Honeycutt's uncorrected vision in both eyes was 20/30. (R. at 415.) The remainder of the examination was normal. (R. at 415.) Dr. Awan diagnosed glaucoma suspect and previous ocular hypertension. (R. at 415.)

On April 17, 2012, Dr. Michael Hartman, M.D., a state agency physician, reported that Honeycutt had the residual functional capacity to perform light work. (R. at 61-63.) He reported that Honeycutt was limited to occasional pushing and/or pulling, including operation of hand and/or foot controls, with his left upper and lower extremities. (R. at 62.) Dr. Hartman opined that Honeycutt could frequently

-10-

climb ramps and stairs and stoop; occasionally kneel and crouch; and never climb ladders, ropes or scaffolds and crawl. (R. at 62.) He found that Honeycutt could do only occasional handling and overhead reaching with his left upper extremity. (R. at 62-63.) No visual or communicative limitations were noted. (R. at 63.) Dr. Hartman opined that Honeycutt should avoid working around concentrated exposure to hazards, such as machinery and heights. (R. at 63.)

On May 21, 2012, Patrick N. Farley, Ed.D., a licensed professional counselor, saw Honeycutt at the request of Honeycutt's attorney for depression and pain management issues. (R. at 41, 425-26.) Farley reported that Honeycutt was restless and exhibited occasional facial grimaces of pain. (R. at 426.) He displayed no indication of psychosis; his thought content was rational and coherent; his affect was full; he reported no history of hallucinations or delusions; he had little insight; his short-term memory and concentration appeared mildly impaired; and his frustration tolerance was diminished. (R. at 426.) Farley diagnosed major depression, recurrent, moderate; and mood disorder due to general medical condition. (R. at 426.) He assessed Honeycutt's then-current Global Assessment of Functioning, ("GAF"),[6] score at 50.[7] (R. at 426.) Farley stated that, due to the combination of physical and psychological symptoms, Honeycutt was then-currently unable to maintain gainful employment. (R. at 426.)

---

[6] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[7] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

On August 11, 2012, Farley completed a mental assessment, indicating that Honeycutt had a seriously limited ability to follow work rules; to relate to co-workers; to use judgment; to interact with supervisors; to function independently; to understand, remember and carry out detailed and simple instructions; to maintain personal appearance; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 417-19.) He opined that Honeycutt had no useful ability to deal with the public; to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out complex job instructions; and to demonstrate reliability. (R. at 417-18.) Farley noted that diminished concentration, memory problems and decreased frustration tolerance significantly inhibited Honeycutt's ability to cope with stressors. (R. at 419.) He opined that Honeycutt would be absent from work more than two days a month. (R. at 419.)

On August 20, 2012, Farley reported that Honeycutt had a depressed mood and flat affect. (R. at 422.) He found that Honeycutt's immediate, recent and remote memory were slightly to mildly impaired; his thought content and organization was rational and coherent; he was not confused; he had decreased attention span and concentration; and his judgment was impaired. (R. at 422-23.) Farley reported that Honeycutt was unable to manage day-to-day stressors in the work environment. (R. at 423.) He diagnosed major depression, recurrent, moderate; and mood disorder due to general medical condition. (R. at 420.) On December 21, 2012, Honeycutt reported that his anxiety was improving. (R. at 463.) On February 18, 2013, Honeycutt complained of pain in his left foot, neck and shoulder. (R. at 461.) Farley noted that Honeycutt's condition was

Case 2:15-cv-00011-PMS   Document 13   Filed 10/18/16   Page 12 of 24   Pageid#: 621

deteriorating. (R. at 461.) He assessed Honeycutt's then-current GAF score at 45, with his highest GAF score being 50 within the past year. (R. at 461.)

On March 9, 2013, Farley completed a mental assessment indicating that Honeycutt had a seriously limited ability to follow work rules; to relate to co-workers; to use judgment; to interact with supervisors; to function independently; to understand, remember and carry out detailed and simple instructions; to maintain personal appearance; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 472-74.) He opined that Honeycutt had no useful ability to deal with the public; to deal with work stresses; to maintain attention and concentration; to understand, remember and carry out complex job instructions; and to demonstrate reliability. (R. at 472-73.) Farley noted that Honeycutt continued to manifest diminished concentration, memory problems and decreased frustration tolerance, all of which significantly inhibited his ability to cope with stressors. (R. at 474.) He opined that Honeycutt would be absent from work more than two days a month. (R. at 474.)

On September 23, 2013, Farley completed a mental assessment, indicating that Honeycutt had a limited, but satisfactory, ability to follow work rules and to maintain personal appearance. (R. at 490-92.) He found that Honeycutt had a seriously limited ability to relate to co-workers; to use judgment; to interact with supervisors; to function independently; to understand, remember and carry out detailed and simple instructions; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 490-91.) He opined that Honeycutt had no useful ability to deal with the public; to deal with work stresses; to maintain

-13-

attention and concentration; to understand, remember and carry out complex job instructions; and to demonstrate reliability. (R. at 490-91.) Farley noted that Honeycutt continued to manifest diminished concentration, memory problems and decreased frustration tolerance, all of which significantly inhibited his ability to cope with stressors. (R. at 492.) He opined that Honeycutt would be absent from work more than two days a month. (R. at 492.)

On October 14, 2013, Honeycutt continued to report pain. (R. at 494.) Farley reported that Honeycutt's symptoms and functional impairments were chronic, and his prognosis for improvement was poor. (R. at 494.) He opined that Honeycutt was permanently unable to work. (R. at 494.)

On September 8, 2012, Dr. Kevin Blackwell, D.O., examined Honeycutt at the request of Disability Determination Services. (R. at 431-35.) Dr. Blackwell reported that Honeycutt did not appear to be in any acute distress; he was alert, cooperative and oriented with good mental status; and his affect, thought content and general fund of knowledge appeared intact. (R. at 433.) Honeycutt had a symmetrical and balanced gait; good and equal bilateral shoulder and iliac crest heights; upper and lower joints had no effusions or obvious deformities; upper and lower extremities were normal for size, shape, symmetry and strength; grip strength was good and equal bilaterally; he had normal fine motor movement and skill activities of the hands; and reflexes in the upper and lower extremities were good and equal bilaterally. (R. at 434.) Dr. Blackwell diagnosed degenerative disc disease; left shoulder pain; left knee pain; and elevated blood pressure. (R. at 434.)

-14-

Dr. Blackwell opined that Honeycutt could occasionally lift items weighing up to 40 pounds and frequently lift items weighing up to 20 pounds. (R. at 434.) He opined that Honeycutt could sit for six hours in an eight-hour workday and stand for two hours in an eight-hour workday with normal positional changes. (R. at 434.) Dr. Blackwell opined that Honeycutt could reach above head with his right arm one-third of the workday, but he should avoid reaching above head with his left arm. (R. at 434.) He found that Honeycutt could operate foot pedals bilaterally one-third of the workday and kneel one-third of the workday. (R. at 434.) Dr. Blackwell found that Honeycutt could not crouch, crawl, squat, work around unprotected heights or perform repetitive and continuous stair climbing. (R. at 434.) No visual, communicative, hearing or environmental limitations were noted. (R. at 434.) Dr. Blackwell opined that Honeycutt had no limitation of hand usage, including fine motor movement and skill activities. (R. at 434.)

On September 11, 2012, Willard D. Sims, M.Ed., a licensed senior psychological examiner, and Diane L. Whitehead, Ph.D., a licensed clinical psychologist, evaluated Honeycutt at the request of Disability Determination Services. (R. at 437-41.) Honeycutt displayed a mildly depressed mood and affect and acceptable levels of concentration and attention. (R. at 437, 440.) He reported that he got along adequately with others, attended church and occasionally went fishing. (R. at 438, 440.) Honeycutt denied crying spells. (R. at 439.) He reported feelings of guilt "sometimes because of doing some girlfriends wrong in the past." (R. at 439.) Honeycutt reported that, at times, he felt anxious "like recently when I lost my wallet." (R. at 439.) Sims and Whitehead diagnosed depressive disorder,

-15-

not otherwise specified, and assessed Honeycutt's then-current GAF score at 60.[8] (R. at 439-40.)

Sims and Whitehead opined that Honeycutt had mild limitations in his ability to understand and remember, noting that he would be able to remember a work location and work schedule; to sustain concentration and persistence; and to adjust to change and its requirements. (R. at 440.) They opined that Honeycutt had no limitations on his ability to interact with others; to maintain basic standards of neatness and cleanliness; to interact with the public; to respond appropriately to correction from supervisors; and to be aware of normal hazards and to take appropriate precautions. (R. at 440.)

On October 4, 2012, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Honeycutt had no limitations on his ability to perform his activities of daily living and to maintain social functioning. (R. at 75.) Leizer found that Honeycutt had mild difficulties in maintaining concentration, persistence or pace and that he had not experienced any episodes of decompensation of extended duration. (R. at 75.) Leizer noted that, although Honeycutt had a diagnosis of depression and mood disorder, the medical evidence of record did not indicate the presence of a severely limiting mental impairment. (R. at 75.)

On October 4, 2012, Dr. Joseph Duckwall, M.D., a state agency physician,

---

[8] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ...  OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

reported that Honeycutt had the residual functional capacity to perform light work. (R. at 76-78.) He reported that Honeycutt was limited to only occasional pushing and/or pulling, including operation of hand and/or foot controls, with his left upper and lower extremities. (R. at 77.) Dr. Duckwall opined that Honeycutt could occasionally climb ramps and stairs, stoop, kneel and crouch; and never climb ladders, ropes or scaffolds and crawl. (R. at 77.) He found that Honeycutt could do only occasional handling and overhead reaching with his left upper extremity. (R. at 77-78.) No visual or communicative limitations were noted. (R. at 78.) Dr. Duckwall opined that Honeycutt should avoid working around concentrated exposure to extreme cold, wetness and hazards, such as machinery and heights. (R. at 78.)

On October 29, 2012, Dr. Danny A. Mullins, M.D., an orthopaedist, saw Honeycutt for complaints of left foot pain. (R. at 485.) Honeycutt reported that he injured his left foot in a mining accident 30 years ago. (R. at 485.) Dr. Mullins reported that Honeycutt had some tenderness of the mid foot laterally. (R. at 485.) He found that Honeycutt was grossly neurovascularly intact. (R. at 485.) X-rays of Honeycutt's left foot were negative. (R. at 485.) Dr. Mullins diagnosed early post-traumatic degenerative-type changes. (R. a 485.) On November 8, 2012, an MRI of Honeycutt's left foot showed moderate osteoarthrosis of the first metatarsophalangeal, ("MTP"), joint and interphalangeal, ("IP"), joint of the great toe. (R. at 443, 484.) On February 21, 2013, Honeycutt reported that he was doing better overall. (R. at 484.) Dr. Mullins recommended that he use an exercise bicycle rather than jogging or walking for exercise and that he could perform activities as tolerated. (R. at 484.)

-17-

On October 16, 2013, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Honeycutt. (R. a 503-06.) Spangler reported that the examination took an extra hour and 11 minutes due to Honeycutt's slow pace. (R. at 503.) Honeycutt had adequate recall of remote and recent events. (R. at 504.) He appeared fatigued and stressed. (R. at 504.) Spangler reported that Honeycutt had a blunted affect and depressed mood. (R. at 504.) The Personality Assessment Inventory, ("PAI"), was administered, and the results were reported as being consistent with Farley's diagnoses of major depressive disorder, recurrent, moderate to severe; and mood disorder, secondary to stressors and medical conditions. (R. at 505.) Spangler diagnosed major depressive disorder, recurrent, moderate to severe; mood disorder, secondary to medical conditions, moderate; chronic pain syndrome; average to high average intelligence; erratic concentration after one hour, moderate; and slow pace. (R. at 506.)

Spangler completed a mental assessment, indicating that Honeycutt had a limited, but satisfactory, ability to function independently on good days and to maintain attention and concentration up to one hour. (R. at 507-09.) He found that Honeycutt was seriously limited in his ability to function independently on bad days and to maintain attention and concentration after one hour. (R. at 507.) Spangler also found that Honeycutt had a seriously limited ability to follow work rules; to relate to co-workers; to use judgment; to interact with supervisors; to understand, remember and carry out simple instructions; to maintain personal appearance; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 507-08.) He opined that Honeycutt had no useful ability to deal with the public; to deal with work stresses; to understand, remember and carry

-18-

out complex and detailed job instructions; and to demonstrate reliability. (R. at 507-08.) Spangler noted that Honeycutt's work-related activities were significantly impacted by moderate to severe major depression and a moderate mood disorder and that his impairments "probably equals or meets listing 12.04 when depression cycles to severe level." (R. at 509.) He also noted that Honeycutt's slow pace rendered him noncompetitive. (R. at 509.) Spangler opined that Honeycutt would be absent from work more than four days a month. (R. at 492.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2015); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2015).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether

substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Honeycutt argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 5-7.) Honeycutt further argues that the ALJ erred by failing to give appropriate credence to his testimony and properly assess the effect of pain on his ability to perform substantial gainful activity. (Plaintiff's Brief at 7-9.)

The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a) (2015). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b) (2015). The Fourth Circuit held in *Evans v. Heckler,* that ""'[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.""'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984))

-20-

(citations omitted).

Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding that Honeycutt did not suffer from a severe mental impairment. A review of the record shows that Honeycutt never complained of any mental health problems to any of his health care providers until he saw Farley at the request of his counsel. Even after seeing Farley in May 2012, Honeycutt denied suffering from any anxiety or depression on July 9, 2012, January 10, 2013, March 26, 2013, April 2, 2013, and July 11, 2013. (R. at 401, 447, 519, 526, 533.) While Farley found that Honeycutt was disabled, he offered no treatment and did not refer him to a psychiatrist. The ALJ gave Farley's opinions "very little weight." (R. at 26.) The ALJ noted that Farley's opinions were not consistent with the medical evidence of record. (R. at 26.) The ALJ also gave "very little weight" to Spangler's opinion because it is not consistent with the medical evidence of record, which is consistent with no more than minimal work-related mental limitations. (R. at 26.) The ALJ gave greater weight to the opinion of Sims and Whitehead, who opined that Honeycutt had mild limitations in his ability to understand and remember; to sustain concentration and persistence; and to adjust to change and its requirements. (R. at 26, 440.) They opined that Honeycutt had no limitations on his ability to interact with others; to maintain basic standards of neatness and cleanliness; to interact with the public; to respond appropriately to correction from supervisors; and to be aware of normal hazards and to take appropriate precautions. (R. at 440.)

The record shows that on May 24, 2011, Honeycutt reported that he was planning to retire in June 2011, and he expressed excitement about the prospect of

being able to do some things that he enjoyed, such as fishing and hunting. (R. at 360.) As stated above, Honeycutt routinely denied depression, anxiety and memory loss to his primary caregivers at Community Physicians from 2011 through 2013. (R. at 340-41, 401, 407, 447, 519, 526, 533.) His mood and affect were repeatedly reported as normal. (R. at 403, 449, 522, 529, 535.) On September 8, 2012, Dr. Blackwell reported that Honeycutt was oriented with good mental status. (R. at 433.) On September 11, 2012, Honeycutt displayed a mildly depressed mood and affect and acceptable levels of concentration and attention. (R. at 437, 440.) Honeycutt reported that he got along with others, attended church and occasionally went fishing. (R. at 438, 440.) State agency psychologists found that, while Honeycutt had been diagnosed with depression and a mood disorder, the medical evidence did not indicate the presence of a severely limiting mental impairment. (R. at 75.)

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his findings. Based on the above, I find that the ALJ properly weighed the medical evidence in determining that Honeycutt did not suffer from a severe mental impairment.

-22-

Honeycutt further argues that the ALJ erred by failing to give appropriate credence to his testimony and properly assess the effect of pain on his ability to perform substantial gainful activity. (Plaintiff's Brief at 7-9.) In his opinion, the ALJ found that Honeycutt's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but he found that Honeycutt's statements concerning the intensity, persistence and limiting effects of these symptoms were not totally credible. (R. at 24.) The ALJ noted that Honeycutt received only conservative treatment for his back pain. (R. at 24.) Examination findings and objective test results revealed fairly unremarkable results, including full strength in both legs and full strength and grip in both upper extremities; a full range of motion in his back, left shoulder and knees; full strength in Honeycutt's left knee; and a normal gait. (R. at 360, 363, 365, 381.) Honeycutt was discharged from physical therapy after two months of treatment for low back pain with significant improvement, including deceased pain and increased range of motion in his lumbar and cervical spines. (R. at 238, 245, 247, 345.) Honeycutt reported that Lortab relieved his back pain. (R. at 365.) In September 2012, Dr. Blackwell reported that Honeycutt had a symmetrical and balanced gait; good and equal bilateral shoulder and iliac crest heights; upper and lower joints had no effusions or obvious deformities; upper and lower extremities were normal to size, shape, symmetry and strength; grip strength was good and equal bilaterally; he had normal fine motor movement and skill activities of the hands; and reflexes in the upper and lower extremities were good and equal bilaterally. (R. at 434.) Based on this, I find that the ALJ's pain analysis and credibility determination are supported by substantial evidence.

-23-

Based on the above reasoning, I find that substantial evidence exists in the record to support the ALJ's finding that Honeycutt was not disabled. An appropriate Order and Judgment will be entered.

ENTERED: October 18, 2016.

s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE